In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3865

JEFFREY L. SMITH,

*Plaintiff-Appellant*,

*v.*

MEDICAL BENEFIT
ADMINISTRATORS GROUP, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 09 C 538—**Rudolph T. Randa**, *Judge*.

ARGUED SEPTEMBER 7, 2010—DECIDED MARCH 15, 2011

Before FLAUM, ROVNER, and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge*.  On behalf of himself and others similarly situated, Jeffrey L. Smith sued Medical Benefits Administrators Group, Inc. (doing business as "Auxiant"), the claims administrator for his workplace health insurance plan, contending that Auxiant breached its fiduciary obligations to Smith when it preauthorized his gastric bypass surgery and then turned around and

denied his claim for benefits after the surgery took place on the ground that it was excluded from coverage under the terms of Smith's health insurance plan. Smith sought both monetary and injunctive relief pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). The district court dismissed his complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), reasoning that Smith was primarily interested in an award of monetary relief that ERISA does not authorize for a breach of fiduciary duty, and that although equitable relief is available for such an injury under the statute, the type of injunctive relief that Smith sought amounted to a form of extracontractual relief that ERISA likewise does not permit. *Smith v. Med. Benefit Adm'rs Grp., Inc.*, 665 F. Supp. 2d 989 (E.D. Wis. 2009). We affirm in part and reverse in part. Although we agree with the district court that legal relief is unavailable to Smith, he may have a viable claim for equitable relief. This assumes, as we note in closing, that Smith's complaint has accurately characterized Auxiant's pre-authorization decisions and has not omitted any disclaimers that Auxiant may have issued to participants as to the nature of these decisions.

The following facts are derived from Smith's complaint, and we accept them as true for purposes of deciding whether the complaint states a claim on which relief may be granted. *E.g.*, *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010). Smith works in Fond du Lac, Wisconsin, for Brenner Tanks, which sponsors a group health plan for its employees. Auxiant serves as the third-party claims administrator for that plan

(among others), in which capacity it grants or denies claims for benefits under the health plan. The terms of that plan obligated Smith to notify Auxiant and obtain preauthorization for certain medical services, including any (non-emergency) surgery. On May 19, 2006, Smith and his physicians notified Auxiant that Smith had been advised to undergo gastric bypass surgery in order to ameliorate his congestive heart failure and other medical complaints. About four months later, on September 11, 2006, Auxiant preauthorized the surgery, and Smith underwent the surgery on October 5, 2006. On November 27, 2006, Auxiant denied payment of the claims resulting from Smith's surgery and hospitalization, citing an exclusion in the health plan for surgery and other medical services related to obesity. Smith exhausted his internal appellate remedies with Auxiant without success. Smith's medical providers then sought payment directly from Smith.

What happened to Smith is not unique, according to the complaint. He alleges that Auxiant routinely drags its feet in responding to preauthorization requests, leaving plan participants in limbo as to whether the surgical procedures and other treatments their physicians have recommended will be authorized, and in some cases forcing participants to undergo treatment without knowing whether Auxiant will authorize it. Second, and more centrally, he alleges that Auxiant routinely preauthorizes medical treatment after a cursory review that does not consider whether the proposed services or the underlying condition they are intended to treat are covered by the terms of the

health plan. Only after the insured has received the preauthorized treatment and Auxiant receives claims from the insured's medical providers does Auxiant consider whether the medical services in question are, in fact, covered. Consequently, Auxiant may, as in Smith's case, deny coverage for treatment that it preauthorized. The insured is then left on the hook for the costs of treatment that he might have elected to forego had he realized that it would not be covered by insurance.

Smith's complaint characterizes Auxiant's delayed preauthorization decisions, and its practice of pre-authorizing treatment without considering whether the treatment is covered by the insurance policy, as breaches of the fiduciary obligations that Auxiant owes to Smith and his fellow plan participants. Smith seeks "an appropriate award of damages, restitution, and/or other monetary relief" (R. 1 at 12) to compensate him for the financial injury he suffered in undergoing a surgery that Auxiant later determined was not covered by his health plan, along with injunctive and declaratory relief. His complaint seeks similar relief on behalf of other insureds who have likewise obtained preauthorization for medical treatment that Auxiant determined to be excluded from coverage after the fact.

The district court dismissed the complaint, concluding that the relief Smith seeks is not authorized by the relevant provisions of ERISA. Smith could not obtain relief under section 502(a)(1) of the statute, which authorizes a claim for benefits due under a plan, 29 U.S.C. § 1132(a)(1)(B), because as Smith conceded, his health

insurance plan does not actually cover gastric bypass surgery. 665 F. Supp. 2d at 991. Nor could he obtain relief under section 502(a)(2), the provision that Smith cited in his complaint. 29 U.S.C. § 113(a)(2). That provision authorizes a plan participant, among others, to seek "appropriate relief" under section 409(a) of the statute, which in turn renders a fiduciary "personally liable to make good to [a] plan any losses to the plan," resulting from a breach of the fiduciary's obligations. 29 U.S.C. § 1109(a). Smith was seeking compensation for the loss to his own pocketbook rather than to the plan, and as he conceded that his insurance plan did not entitle him to coverage for his surgery, he was seeking the very sort of extracontractual relief that the Supreme Court had said was not authorized by section 502(a)(2). 665 F. Supp. 2d at 992-93 (applying *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148, 105 S. Ct. 3085, 3093 (1985)). Extracontractual relief in the form of compensatory damages was likewise unavailable to Smith under section 502(a)(3)(B), which authorizes only "appropriate equitable relief" for practices that contravene the statute or the terms of the plan. 29 U.S.C. § 1132(a)(3)(B). Injunctive relief and other forms of equitable relief were authorized, but to the extent Smith sought such relief, he was, in the court's view, seeking to modify rather than to vindicate the terms of his health insurance plan. 665 F. Supp. 2d at 994. For example, Smith proposed an injunction that would forbid Auxiant from denying benefits to a plan participant for preauthorized treatment on any ground that Auxiant had not identified during its pre-service review. "In effect, Smith would

have the Court enter an order varying the terms of the plan documents in the event that Auxiant pre-approved a procedure or failed to follow the relevant pre-authorization regulations. This is a convoluted form of extra-contractual relief, but it is extracontractual nonetheless. Even if Smith was harmed by his reliance on Auxiant's pre-authorization, he still received the proper amount due under the plan—nothing." *Id.*

Although Smith filed this suit as a class action, the district court dismissed his complaint without reaching the subject of class certification. Therefore, for purposes of our review, we shall treat the case as if it were filed on Smith's behalf alone. *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 797-98 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 1007 (2011). Our review of the dismissal is, of course, de novo. *Id.* at 798. Smith is required by Federal Rule of Civil Procedure 8(a)(2) to set forth in his complaint "a short and plain statement of the claim showing that [he] is entitled to relief." He need not plead a detailed set of facts, so long as the complaint supplies Auxiant with "fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007)); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). His claim must be "plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974; *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009), which requires the court to consider whether the events alleged could have happened, not whether they did happen or likely happened, *Swanson*, 614 F.3d at 404. *See also In re Text Messaging Antitrust Litigation*, 630 F.3d

622, 629 (7th Cir. 2010) ("the complaint must establish a nonnegligible probability that the claim is valid; but the probability need not be as great as such terms as 'preponderance of the evidence' connote").

Smith's complaint plausibly alleges that Auxiant breached its fiduciary obligations to him. As a claims administrator with the power to grant or deny a participant's claim for health insurance benefits, Auxiant is an ERISA fiduciary. 29 U.S.C. § 1002(21)(A)(i) and (iii); *e.g.*, *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 803 (7th Cir.), *cert. denied*, 130 S. Ct. 200 (2009). As such, Auxiant is obliged to carry out its duties solely in the interest of the insurance plan's participants and beneficiaries and with the exclusive purpose of providing them with benefits, while employing "the care, skill, prudence, and diligence" of a knowledgeable and prudent individual acting in the same capacity. 29 U.S.C. § 1104(a)(1)(A)(i) and (B); *see Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 465-66 (7th Cir. 2010). Auxiant "thus owes the participants in [the] plan and their beneficiaries a duty of loyalty like that borne by a trustee under common law, § 1104(a)(1)(A), and it must exercise reasonable care in executing that duty, § 1104(a)(1)(B)." *Id.* at 466 (citing *Mondry*, 557 F.3d at 807). This duty of loyalty encompasses a negative obligation not to mislead the insured, as well as a positive obligation to communicate material information to the insured in circumstances where the fiduciary's silence might itself lead the insured to misapprehend his rights and obligations. *Id.*

Accepting the allegations of Smith's complaint as true, one can see how Auxiant's preauthorization practices might constitute a breach of this duty. By preauthorizing a medical treatment without first ascertaining whether that treatment is covered by the insurance plan, and indeed without warning the insured that coverage might be denied notwithstanding the preauthorization, Auxiant could be thought to be misleading the insured to his detriment. We reached a similar conclusion in *Kenseth*, where the insurer encouraged plan participants with questions about whether a particular medical service would be covered to telephone a customer service representative, who would in turn answer those questions without warning the caller that the advice was not binding and that the insurer might reach a different conclusion after the caller underwent treatment. 610 F.3d at 466-81. Delays in preauthorization might also be seen as inconsistent with Auxiant's obligation to the insured. To the extent such delays exceed the period of time allowed by federal regulations, as Smith has alleged,[1] they could be deemed unreasonable and in that sense a breach of the duty of care that Auxiant owed to Smith and the other participants in the group health plan. *See Mondry*, 557 F.3d at 807-08 (specific statutory

---

[1] *See* 29 C.F.R. § 2560.503-1(f)(2)(iii)(A) ("In the case of a pre-service claim, the plan administrator shall notify the claimant of the plan's benefit determination (whether adverse or not) within a reasonable period of time appropriate to the medical circumstances, but not later than 15 days after receipt of the claim by the plan. . . .").

mandates can inform scope of fiduciary's duty to in-sured). And to the extent a delay in preauthorization might foreseeably harm the insured by forcing him to postpone the treatment his physician has recommended, it could be understood as a breach of the duty of loyalty to the insured. The complaint thus articulates a viable theory of liability. The more difficult question is whether Smith may obtain meaningful relief on that theory.

Section 502 of ERISA identifies who is entitled to bring a civil action to enforce the prescriptions of the statute and what relief may be obtained. The district court correctly identified the three provisions of this section that are potentially relevant here. Section 502(a)(1)(B) permits a plan participant or beneficiary to, inter alia, "recover benefits due to him under the plan [or] to enforce his rights under the terms of the plan . . . ." § 1132(a)(1)(B). But Smith concedes that the terms of the plan exclude his gastric bypass surgery from coverage. Thus, as the district court correctly reasoned, whatever Auxiant may have led Smith to believe when it preauthorized his surgery, he cannot obtain relief for a denial of benefits pursuant to section 502(a)(1), as there are no benefits owed to him under the terms of the plan.

Section 502(a)(2) of the statute permits a plan participant to seek "appropriate relief" pursuant to section 409, which in turn deems a fiduciary personally liable for, inter alia, "any losses to the plan" resulting from a breach of the fiduciary's obligations, along with "such other equitable or remedial relief as the court may

deem appropriate." §§ 1109, 1132(a)(2). However, when he seeks relief under section 502(a)(2), a plan participant acts as a representative of the plan, and any relief he obtains "inures to the benefit of the plan as a whole." *Massachusetts Mut. Life Ins. Co. v. Russell*, *supra*, 473 U.S. at 140, 105 S. Ct. at 3089. This is not the type of relief that Smith seeks; his complaint is plainly aimed at obtaining relief for injuries that *he*, rather than his plan, suffered as a result of Auxiant's alleged actions. *See, e.g.*, *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) (affirming dismissal of request for relief under section 502(a)(2) for allegedly improper denial of disability benefits, where complaint did not allege that insurance plan as whole suffered any injury as consequence of alleged mishandling of claim); *see also Varity Corp. v. Howe*, 516 U.S. 489, 515, 116 S. Ct. 1065, 1079 (1996) (section 502(a)(2) "does not provide a remedy for individual beneficiaries") (citing *Russell*).

   In this respect, Smith finds himself in the same position as the respondent in *Russell*, who sought compensation for the financial and psychological injuries she suffered when her disability benefits were interrupted for five months. Russell alleged that plan officials had breached their fiduciary obligations in cutting off her benefits when they ignored the medical evidence of her continuing disability, applied criteria that were too strict, and intentionally took more time to act on her request for an internal review than permitted by regulations. But once Russell had prevailed in that review, she had been granted retroactive benefits and thus had ultimately been granted everything to which her

insurance plan entitled her. The additional relief that she sought in the way of damages was extracontractual, and the Court concluded that the statute provided no authority for an award of such relief to a beneficiary. 473 U.S. at 144, 148, 105 S. Ct. at 3091, 3093.

The Court's more recent decision in *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 128 S. Ct. 1020 (2008), is of no help to Smith vis-à-vis the scope of section 502(a)(2). *LaRue* simply holds that in the context of a defined contribution pension plan, in which there are individual accounts holding assets for each participant, malfeasance by a plan fiduciary that adversely affects the value of the assets held in such an account will support a suit under sections 409 and 502(a)(2) regardless of whether the wrongdoing affects one account or all accounts in the plan. "Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409." *Id.* at 256, 128 S. Ct. at 1025. The plan at issue here, however, is a group health insurance plan, which is the kind of defined benefit plan that the Court dealt with in *Russell* (and distinguished in *LaRue*), and which typically holds no assets in trust for any individual participant. It is *Russell* rather than *LaRue* that controls here, and as Smith has identified no injury to the plan, he has no viable claim for relief under section 502(a)(2), as the district court concluded. 665 F. Supp. 2d at 992-93.

That leaves section 502(a)(3), which authorizes a plan participant, among others, to file suit "(A) to enjoin any

act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" § 1132(a)(3). It is this provision of ERISA that permits a participant to obtain relief for a breach of fiduciary duty on behalf of himself as opposed to the plan. *Steinman v. Hicks*, 352 F.3d 1101, 1102 (7th Cir. 2003) (coll. cases).[2] The difficulty Smith faces, however, is that section 502(a)(3) permits only injunctive and "other appropriate equitable relief." Legal remedies are thus foreclosed to Smith for Auxiant's alleged breach of fiduciary duty. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 113 S. Ct. 2063 (1993). Consequently, although he may have relied to his detriment on Auxiant's preauthorization of his surgery, and now must pay for that surgery himself, he cannot be compensated monetarily for that injury, as that is a classic form of legal relief. *Kenseth*, 610 F.3d at 483. Restitution, it is true, may in appropriate circumstances be deemed equitable rather than legal relief, as when a fiduciary is wrongfully holding money that belongs to plaintiff. *Kenseth*, 610 F.3d at 482; *cf. Mondry*, 557 F.3d at 806-07 (self-funded insurance plan, by delaying reimbursement to

---

[2] The fact that Smith cited section 502(a)(2) alone and not section 502(a)(3) in his complaint is not fatal to his complaint, as the federal rules do not require him to plead legal theories in his complaint. *E.g.*, *Hatmaker v. Memorial Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010), *cert. denied*, 2011 WL 767573 (U.S. Mar. 7, 2011) (No. 10-724).

plaintiff for covered services, arguably benefitted from delay while depriving plaintiff the time value of her money; restitution therefore equitable in sense it would serve to disgorge plan of ill-gotten gain). But that is not the case here. Smith concedes that the plan excludes coverage for his surgery and does not otherwise allege that Auxiant is wrongfully withholding money that belongs to him. *See Kenseth*, 610 F.3d at 482.

Still, section 502(a)(3) does authorize an award of declaratory and injunctive relief. The complaint's prayer for relief sought both types of relief, R. 1 at 12-13, and in his memorandum opposing Auxiant's motion to dismiss, Smith reiterated that he indeed intended to pursue these types of relief, R. 8 at 22-23, 24. The district court acknowledged as much, but concluded that the injunctive relief Smith was seeking was but another form of extracontractual relief that ERISA did not authorize. In particular, Smith suggested that it might be appropriate for the court to enjoin Auxiant from invoking coverage exclusions or other defenses when it has preauthorized medical services without noting such exclusions or defenses or when it has failed to comply with the regulations governing insurance claims handling. R. 8 at 22. The district court construed this as a request for extracontractual relief to the extent that such an injunction would effectively modify the terms of the plan. 665 F. Supp. 2d at 994. It may well be right. But even if ERISA would not permit that particular form of injunctive relief, there are other forms of meaningful declaratory and injunctive relief that might be wholly consistent with ERISA. To cite an obvious example (one that Smith himself noted below), the

court could declare that Auxiant's method of handling requests for preauthorization either do not comply with the governing regulations (because, for example, Auxiant takes too long to respond) or amounts to a breach of fiduciary duty (because Auxiant misleads the insured into believing that preauthorization constitutes a determination that the claim will be paid). Consistent with such a declaration, the court might require Auxiant to modify its preauthorization practices so as to bring them into conformity with the governing regulations as well as its broader fiduciary obligations to plan participants. These might be entirely appropriate forms of relief if, as Smith's complaint alleges, what happened to him was not an isolated occurrence but was consistent with Auxiant's routine preauthorization practices; declaratory and injunctive relief would serve to define the parties' respective rights and obligations and to prevent the types of fiduciary breaches Smith has alleged from recurring. *Cf. Donovan v. Cunningham*, 716 F.2d 1455, 1461-62 (5th Cir. 1983) (noting that voluntary cessation of purportedly illegal activity by fiduciaries does not necessarily render moot a suit for injunctive relief, as such relief may be necessary to prevent recurrence of wrongdoing) (cited with approval in *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 693-94, 696-97 (7th Cir. 1986) (en banc)). As the plan at issue is a health insurance plan, it is foreseeable that Smith himself may well seek preauthorization for medical services in the future, so the possibility of recurrence is more than theoretical. And, of course, whether or not a class is certified, there are presumably many other plan partici-

pants who might benefit from a modification of Auxiant's practices.

Because Smith's complaint sets forth a plausible claim that Auxiant has breached its fiduciary obligations to him, and because there are forms of appropriate equitable relief that are available to address that breach, the district court erred in dismissing his complaint. That said, a cautionary note is in order.

We have assumed the truth of the facts that Smith has alleged as we must at this stage of the litigation. Development of the record may reveal that some of these facts are untrue and may reveal additional facts that cast Auxiant's practices in a different light. Smith did not attach to his complaint a copy of the health insurance plan that covers him and the other employees of Brenner Tanks, so we know nothing about what that plan tells an insured regarding the nature of Auxiant's preauthorization decisions or about how an insured may obtain coverage advice before undergoing medical treatment. *Cf. Kenseth*, 610 F.3d at 476-77 (plan language said nothing about how insured could obtain binding coverage advice in advance of treatment and instead encouraged participants to call customer service line with coverage questions, without warning callers not to rely on what they were told). Moreover, although Smith now concedes that gastric bypass surgery was not covered by the terms of the plan, we do not know how clear the plan language makes that particular exclusion to the reader and whether he should have understood that exclusion when he sought preauthorization for the

procedure. *Cf. id.* at 474-75 (noting ambiguity of plan's exclusion for medical services related to non-covered procedures). Similarly, we know nothing about what an insured is told when he receives preauthorization from Auxiant to undergo medical treatment. Pre-authorization decisions are not necessarily coverage decisions; preauthorization or precertification may signal nothing more than the insurer's conclusion that the intended medical treatment is necessary and appropriate for the insured's condition, without speaking to the separate question of whether the intended treatment is covered by the terms of the insurance plan. Apropos of that distinction, preauthorization notices often contain disclaimers warning the insured and his physician that preauthorization or precertification does not constitute the insurer's agreement to pay for the treatment. *See Kenseth*, 610 F.3d at 478-79 (citing *Bonilla v. Principal Fin. Grp.*, 281 F. Supp. 2d 1106, 1116-17 (D. Ariz. 2003), and *England v. John Alden Life Ins. Co.*, 846 F. Supp. 798, 801 (W.D. Mo. 1994)). We do not know what if anything the preauthorization notice that Smith was given said in this regard, although Auxiant's counsel represented to us at oral argument that Auxiant's preauthorization notice does contain some form of disclaimer and advice to check the terms of the insurance plan as to coverage. Facts such as these may reveal, contrary to Smith's allegations, that Auxiant's preauthorization of his gastric bypass surgery did not reasonably cause him to believe that the procedure would be covered by his workplace insurance.

### III.

Although legal relief is not available to Smith, his complaint does set forth a plausible claim for declaratory and injunctive relief based on Auxiant's alleged breach of its fiduciary obligations to Smith. In that respect, the district court erred in dismissing his complaint. The case is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART,
and REMANDED