In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1710

MAURA ANNE STUART,

*Plaintiff-Appellant,*

*v.*

LOCAL 727, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 9262 — **Milton I. Shadur**, *Judge.*

ARGUED OCTOBER 31, 2014 — DECIDED NOVEMBER 14, 2014

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff filed this sex discrimination suit under Title VII of the Civil Rights Act of 1964, and the district judge promptly dismissed it while the suit was still at the pleading stage. The facts as we'll state them are a mixture of allegations and admissions; evidentiary proceedings might cast them in a different light.

The plaintiff is a professional driver in Chicago. She has a commercial driver's license that permits her to drive school buses and other large passenger vehicles. She drives school buses for a living but has long wanted also to drive the vehicles (primarily courtesy vans) that ferry equipment and persons, including actors, involved in movie and television productions. In Chicago such drivers belong to the Movie/Trade Show Division of Local 727 (until 2008 of Local 714) of the Teamsters Union, and are paid about twice the wage that the plaintiff earns as a bus driver. Some 250 to 300 drivers are members of the Division, but apparently in its 70-year history the Division has never referred a female driver to any of the movie or television production companies that hire drivers for their courtesy vans.

Local 727 had at the end of 2009 adopted a rule that anyone who wanted to work as a driver for movie and television productions had to submit a "Teamsters Local 727 Application for Referral—Movie" to the union, which has collective bargaining agreements with all the companies that produce movies or TV shows in Chicago. Each agreement provides that the company shall hire only drivers referred to it by the union. The companies employ Transportation Coordinators who select drivers from the Referral—Movie applicants. Although the Transportation Coordinators do the hiring, they are former members of the union and remain tightly linked to it. So in effect it's the union that determines who shall be hired to drive for movie and television producers in the Chicago area.

In March 2010 the plaintiff filled out and submitted to the union a Referral—Movie application and at the same time paid the union's initiation fee, began making dues payments

to the union, and in exchange received a card designating her a member of the union. She explained to the union's business agent that she wanted to be on the Movie/Trade Show referral list, and he told her she was on the list (although the union's lawyer told us at oral argument that there is no such list). Months later, having received no referrals from the Movie/Trade Show Division, she called the business agent a number of times to ask about possible driving jobs. He told her to stop calling him—he'd call her when he had something. She received a similar response from a Transportation Coordinator whom she called.

Yet in the four and a half years that have elapsed since she joined the union and filled out her referral application, she has received no referrals. In fact, according to her complaint, her résumé was never included with the résumés of the other applicants for referral by the Movie/Trade Show Division and no woman has *ever* been referred by the Division for a driving job. Referrals are not based on seniority, there has been no shortage of work—in fact the amount of driving time by Division drivers has increased markedly—and male drivers with the same commercial driver's license as the plaintiff (Class B) have been referred by the Division even though she was eventually told by the business agent that she was not being referred because she didn't have a Class A commercial driver's license.

She filed a charge of sex discrimination with the EEOC in October 2011, and received her right to sue letter in September 2013. A month before receiving the letter she'd been told by Local 727's general counsel that she was not a member of the local even though it had accepted dues payments from her and issued her a membership card.

She filed suit in December 2013, within 90 days of receipt of the right to sue letter, which was within the statutory deadline. But in its answer to her complaint Local 727 pleaded as an affirmative defense that the administrative statute of limitations in Title VII had expired because she'd failed to allege any discriminatory actions during the 300-day period before she filed her charge with the EEOC, 42 U.S.C. § 2000e-5(e)(1)—the period from December 10, 2010, to October 6, 2011. (Although the statute's normal administrative statute of limitations is only 180 days, the 300-day statute is applicable if the claimant first files his or her claim "with a State or local agency with authority to grant or seek relief from" employment discrimination. *Id*. But Stuart did file her claim within the 300-day limit with the Illinois Department of Human Rights, and so it was timely.)

When the defendant filed its answer, the pleading stage of the litigation was complete and the parties would have been expected to begin pretrial discovery. Instead a month after the answer was filed the judge ordered the plaintiff to respond to the statute of limitations defense that the union had pleaded in its answer to the plaintiff's complaint. She complied and in her response explained that Local 727 had failed to refer her for work on any of the numerous television and movie productions that had taken place during the 300-day period, and that the union's answer to the complaint, in pleading the statute of limitations as a defense, had merely created a factual dispute, which could not be resolved on the pleadings. There had been no discovery, no motion to dismiss, and no motion for judgment on the pleadings or for summary judgment.

The judge was unimpressed by the plaintiff's response; four days after receiving it he dismissed the suit with prejudice even though Local 727 had not moved for dismissal with or without prejudice. The judge stated in his opinion that the plaintiff had known about the discrimination against women by the local union and its predecessor, Local 714, since 2005, long before the 300-day period had commenced, and so her suit was untimely. She had alleged failures by the union to refer her for specific television and motion picture projects in Chicago during that period, such as the movie *Superman*. But the judge believed (incorrectly as we'll see) that failure to refer a person for a job, as distinct from a refusal to hire the person, is not discrimination actionable under Title VII, even when the failure to refer is motivated by the person's sex or race or some other characteristic that an employer or union is forbidden to consider.

A plaintiff is not required to negate an affirmative defense in his or her complaint, *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Levin v. Miller*, 763 F.3d 667, 671 (7th Cir. 2014); *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993), for the painfully obvious reason that the defendant will not have pleaded any affirmative defenses until it files its answer or a motion to dismiss. For the plaintiff to deny in the complaint that the statute of limitations has run would merely remind the defendant to consider whether there might be a basis for pleading it. True, "if [the plaintiff] pleads facts that show that his suit is time-barred … , he has pleaded himself out of court. But it does not follow from the fact that a plaintiff can get into trouble by pleading more than he is required to plead that he is required to plead that more." *Id*. The complaint does not allege

that the plaintiff filed her charge with the EEOC more than 300 days after the discriminatory acts alleged in the charge.

In his opinion dismissing the suit with prejudice, the judge said that the plaintiff had been "hoist by her own petard." ("Hoist with his own petard," famously spoken in *Hamlet*, means "lifted" by the explosion of one's own little bomb—a "petard" is a small bomb.) By this he apparently meant that her complaint, because it contained a detailed account of the history of the locals' treatment of women drivers, acknowledged "that she knew full well of the 'boys club' (male-only) situation that existed in the Movie/Trade Show Division even before jurisdiction over that Division was transferred from Teamsters' Local 714 to Local 727 in May 2008. … None of the things about which she now complains … was a mystery to her." And those "things" had begun happening long before the 300-day period culminating in the filing of her EEOC charge.

But so what? There is no rule that a plaintiff who has been repeatedly discriminated against by her employer cannot challenge any of the discriminatory acts under Title VII unless she files her EEOC charge within 300 days after the first such act. *Lewis v. City of Chicago*, 560 U.S. 205, 213–14 (2010). That would be an absurd rule. It would require an employee to infuriate her employer or union by complaining about what might be an inconsequential act of discrimination that she did not expect to be repeated. It would mean that if she'd first been discriminated against in 2000 and next (and more seriously) in 2010, she could not sue for the 2010 discrimination without proving that she had *not* been discriminated against, after all, in 2000, since if she had been

she would have been barred by the rule declared by the district judge from basing a suit on the discrimination in 2010.

The plaintiff clearly alleged acts of discrimination occurring within the 300-day period, but they were failures to refer the plaintiff for work on Movie/Trade Show Division driving jobs and the judge ruled that a failure to refer is not an actionable form of discrimination. He relied on *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). That decision establishes a strict rule that a Title VII suit can be based only on a discriminatory act that occurs within the 180- or 300-day period for filing a charge with the EEOC, and not an act that is merely related to an act occurring during that period. From this the district judge inferred that the plaintiff had to allege a refusal to hire, which is to say "a prospective employer's rejection of a prospective employee's specific *request* to be hired, while the 'failure to refer' concept would place someone such as [the plaintiff] in the position of a ticking time bomb (or more accurately a non-ticking time bomb) who could assert being victimized by discrimination whenever Local 727, knowing that at some earlier point she had evinced a desire to be considered for possible employment, failed to reach out to her even in the absence of a current application for a job that had opened up" (emphasis in original).

The judge's belief that "failure to refer" cannot violate Title VII contradicts the statute, which states that it is unlawful for a union to "fail or refuse to refer for employment any individual" because of the individual's sex. 42 U.S.C. § 2000e-2(c)(2). If a failure to refer were a consequence merely of inadvertence, and if despite the occasional such failure women received a reasonable number of referrals from the em-

ployer, there would be no basis for inferring discrimination on the basis of sex. But the complaint alleges that the plaintiff made repeated, futile requests for referral by the Movie/Trade Show Division, until Local 727's business agent told her "don't call us, we'll call you." At that point, for her to have continued to make requests to him for referrals would only have reduced her chances of ever being referred. The union knew she badly wanted driving jobs on film or TV projects, yet every time there was an opening wouldn't refer her for it, pursuant to a policy of never referring women drivers, though fully qualified, for such openings.

This was not a situation contemplated by the decision in the *Morgan* case. Citing a number of decisions, decided before but not overruled by *Morgan* or any other decision, the Third Circuit in *EEOC v. Metal Service Co.*, 892 F.2d 341, 348–49 and n.8 (3d Cir. 1990), noted with approval that "courts have generally held that the failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie claim of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer. … The Brown brothers [the alleged victims of discrimination in the *Metal Service* case] did everything reasonably possible to make known to Metal Service their interest in applying for a job," and that was good enough to preserve their claim of discrimination despite a finding by the district court, not questioned by the court of appeals, that one of the brothers had not "directly" applied to Metal Service for a job. To the same effect see our decisions in *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 523–24 (7th Cir. 1994), and *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 867 (7th Cir. 1985), and the Fifth Circuit's decision in *Mills v. International Brotherhood of Teamsters, Chauffeurs, Warehouse-*

*men & Helpers of America*, 634 F.2d 282 (5th Cir. 1981)—a case factually almost identical to the present one: a union refused to refer a fully qualified woman for employment as a truck driver, pursuant to the union's male-only policy.

The district judge's analysis if accepted would open a large gap in Title VII. Suppose a woman applies for a job as a crane operator on construction sites, a traditionally male job. The employer has an ironclad but of course undisclosed rule of never hiring women for such jobs. A woman applies and the employer tells her it has no openings now but will notify her as soon as there is one; but in fact the employer has decided that, pursuant to its policy, it will not notify her of *any* openings. 301 days go by and the employer informs her: "Ha ha; we don't hire women; you'll have to file your EEOC charge yesterday if you want to sue us."

The defendant argues that it has no referral list—that it just collects the résumés of union members such as the plaintiff who want to work in the Movie/Trade Show Division; it is the Transportation Coordinators, who are employees not of the union but of the production companies, who decide which of the Division's drivers to hire. So far as appears, however, the union business agent with whom the plaintiff communicated never told her this, but instead conveyed the impression that *he* does the referring when there is an opening for a driving job.

The plaintiff points to another ground, besides the absurdity of thinking that a refusal to hire cannot be actionable discrimination if it is a blanket refusal rather than a refusal made in response to a specific request, for overturning the dismissal of the complaint. That ground is equitable estoppel—the doctrine that tolls the statute of limitations if the

defendant engages in conduct that prevents the plaintiff from filing suit or a claim within the statutory deadline. By telling the plaintiff to stop inquiring about openings for drivers, because she would be notified of such openings without having to call Local 727's business agent, the agent, on the approach taken by the district judge, placed her in an impossible position: she could infuriate him by continuing to call him to inquire about openings and emphasize her interest in them; she could sue the local prematurely for discrimination (because she didn't at that time know that the Division had an ironclad policy against referring women); or she could simply forgo any remedy under Title VII. By impaling her on this three-pronged fork, the business agent prevented her from suing within 300 days for the union's failing to refer her. If contrary to what we believe to be the law, only an express refusal would be actionable, the agent prevented her from complying with the statute of limitations and so Local 727 is equitably estopped to plead the statute.

The judgment is reversed. Because of the abruptness and irregularity of the district judge's handling of this case (we can't understand his deciding to dismiss the complaint with prejudice, thereby preventing the plaintiff from amending the complaint, or his instructing his law clerk to request the plaintiff's EEOC charge from the plaintiff's lawyer, without telling the defendant, even though the charge was not part of the record), and the unmistakable (and to us incomprehensible) tone of derision that pervades his opinion, we have decided that further proceedings in the district court should be before a different district judge. See Circuit Rule 36.