In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-2190

MICHAEL ALEXANDER,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:11-cv-00762-SEB-DKL—**Sarah Evans Barker**, *Judge.*

ARGUED JANUARY 15, 2013—DECIDED JUNE 26, 2013

Before POSNER, WOOD, and TINDER, *Circuit Judges.*

WOOD, *Circuit Judge.* Michael Alexander, an Indiana criminal defense lawyer, brings this suit for malicious prosecution and intentional infliction of emotional distress against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680. His core allegation is that Neal Freeman and James Howell, agents with the Federal Bureau of Investigation (FBI), conspired with Indiana state prosecutor Mark McKinney

and father-son criminal duo Stanley Chrisp and Adrian Kirtz to frame him for bribery. The district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6), finding that it failed to state a claim for malicious prosecution and that the claim for intentional infliction of emotional distress was time-barred. For the reasons discussed below, we reverse.

**I**

Because the district court dismissed this case under Rule 12(b)(6), for present purposes we accept the facts presented in the complaint as true. The origins of the conspiracy against Alexander date back to June 2006, when FBI agents Freeman and Howell began to investigate Alexander's longtime investigator, Jeff Hinds, for bribery. The agents suspected that Hinds was bribing witnesses, including Kirtz, in cases involving Alexander's clients. In an effort to determine whether Alexander was aware of or involved in Hinds's extralegal efforts for his clients, the agents equipped Kirtz and Chrisp with recording devices and sent them to meet with Alexander in July 2006 to discuss the bribes. At the meeting, Alexander told Kirtz and Chrisp that he did not know anything about Hinds's bribery, but he said he would attempt to figure out what was going on. Although Kirtz and Chrisp both later confirmed that this meeting took place and that they handed over recordings of the meeting to the FBI, the agents never produced these recordings and repeatedly claimed both that the meeting had never occurred and that the recordings did not exist.

After July 2006, the bribery investigation lay dormant for months. It heated up again, however, in January 2007, when McKinney took office as the new prosecutor for the 46th Indiana Judicial Circuit. McKinney harbored a grudge against Alexander because Alexander had been a vocal critic of McKinney's handling of drug forfeitures during his tenure as attorney for the City of Muncie/Delaware County Drug Task Force. According to the complaint, upon taking office McKinney entered into a conspiracy with agents Freeman and Howell, as well as Kirtz and Chrisp (both of whom were now under investigation for their participation in an arson ring) to manufacture evidence to support a bribery case against Alexander.

As part of this conspiracy, agents Freeman and Howell both participated in the destruction of the evidence of Kirtz and Chrisp's July 2006 meeting with Alexander; they also worked with Kirtz to create false evidence of Alexander's guilt. On February 1, 2007, Freeman sent Kirtz to meet with Alexander and record their conversation. Freeman and Kirtz created a false "exit interview" summarizing the meeting, in which Kirtz represented that Alexander had indicated that he was involved in and aware of Hinds's bribery scheme. Although the tape of the meeting would have demonstrated that Kirtz's claims were false (and that Alexander had again denied any knowledge of a bribery scheme), the recording Freeman submitted to the FBI was blank. The agents additionally manipulated a third recorded conversation with Alexander from February 15, 2007, to exclude exculpatory evidence.

Freeman then personally prepared a probable-cause affidavit to charge Alexander with bribery. The affidavit included the false and manipulated evidence from the February 1 and 15 meetings with Alexander, while it excluded the evidence from the July 2006 meeting in which Alexander had denied knowing anything about the bribery. Based on this affidavit, an arrest warrant was issued, and Freeman led other officers in arresting Alexander in February 2008.

Over a year passed between Alexander's arrest and trial. During that time, Freeman testified in two separate depositions. In each one, he denied that the July 2006 meeting between Alexander, Kirtz, and Chrisp took place. Also during that time, Stanley Wills—one of the people Hinds had allegedly bribed—met with Alexander and gave a taped statement in which he confirmed that he had never interacted with Alexander and swore that the entire bribery scheme had been fabricated by Kirtz and Chrisp. The complaint alleges that shortly after Alexander released this taped statement to the court and to the media, Freeman met with Wills and pressured Wills into falsely testifying that he had made this statement only after being threatened with physical harm.

Alexander went to trial in Delaware County in March 2009. Freeman testified at trial, where he claimed (falsely) that recordings of Alexander containing exculpatory evidence did not exist, and repeated the (false) story that Wills had been coerced into giving a taped statement to Alexander. The jury acquitted Alexander after just over an hour of deliberations.

Although he was eventually acquitted, Alexander alleges that the ordeal of his arrest and trial on trumped-up charges was quite distressing to him. In addition, as a result of the trial he suffered considerable negative publicity, which damaged his reputation and hurt his law practice. Accordingly, Alexander filed a Notice of Tort Claim with the FBI on October 21, 2010, announcing his intention to sue the United States under the FTCA. After the FBI declined to act on the claim, Alexander initiated this suit in federal district court, bringing claims for, as is relevant for this appeal, malicious prosecution and intentional infliction of emotional distress. The district court dismissed the complaint pursuant to Rule 12(b)(6), finding that Alexander failed to state a claim for malicious prosecution and that his claim for intentional infliction of emotional distress was untimely. This appeal followed.

## II

### A

Because this appeal hinges on what, precisely, the pleading standards embodied in Rule 8 of the Federal Rules of Civil Procedure require Alexander to allege in order to state a claim, we begin with a brief review of those standards. Although the Supreme Court's recent interpretations of Rule 8 in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), have clarified that a plaintiff must do something more than "put[] a few words on paper that, in the hands of an imaginative reader, *might* suggest that something

has happened to her that *might* be redressed by the law," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original), neither decision questions the ongoing validity of Rule 8(a)(2) itself. The Rule requires, as it always has, that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet this standard, a plaintiff is not required to include "detailed factual allegations." Indeed, the Supreme Court has signaled on several occasions that it has not amended the rules of civil procedure *sub silentio* to abolish notice pleading and return to the old fact pleading standards that pre-dated the modern civil rules. See *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Twombly*, 550 U.S. at 570. Instead, in order to assure that a pleading suffices to give effective notice to the opposing party, the Court has said that a complaint must contain facts that are sufficient, when accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Plausibility" for purposes of Rule 8 is not synonymous with "probability"; it is not, for instance, necessary (or appropriate) "to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences." *Swanson*, 614 F.3d at 404; see also *Iqbal*, 556 U.S. at 678 (plausibility is "not akin to a probability requirement") (internal quotation marks omitted). Rather, the plausibility requirement demands only that a plaintiff provide sufficient detail "to present a story that holds together." *Swanson*, 614 F.3d at 404.

Turning to the particulars of Alexander's case, we begin with his claim for malicious prosecution. Because the FTCA generally provides for liability in circumstances in which a private person would be liable to the plaintiff under the laws of the state where the wrongful acts occurred, 28 U.S.C. § 1346(b)(1), and the intentional torts alleged here appear to fall within its scope, see 28 U.S.C. § 2680(h), the first task is to identify what state we are talking about. Here, it is Indiana, where all of the relevant events took place and Alexander's injury occurred. The Indiana tort of malicious prosecution requires a plaintiff to establish that: "(1) the defendant . . . instituted or caused to be instituted an action against the plaintiff . . .; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001). While no party disputes that the fourth element is satisfied here (since Alexander was acquitted of the charges against him), the district court found the complaint deficient with respect to the other three.

In our view, the court asked too much of Alexander. The complaint more or less tracks the first element of the claim, because it expressly alleges that the agents' actions directly caused Alexander's arrest and trial. And, perhaps to ensure that he has included enough to escape the criticism that the complaint is nothing but a "[t]hreadbare recital[] of the elements of [his] cause of action, supported by mere conclusory statements," see *Iqbal*, 556 U.S. at 678, Alexander has provided numer-

ous supporting details: (1) a description of the steps the agents took to manufacture evidence of Alexander's guilt and suppress evidence that tended to show his innocence; (2) an allegation that Freeman personally prepared the probable-cause affidavit that was the basis for Alexander's arrest; and (3) the identification of the actions the agents took after Alexander's arrest to further the prosecution, which included testifying in depositions and at trial and intimidating a potential defense witness. Whatever the floor may be, these allegations are comfortably above it: they are more than sufficient to assert a causal link between the agents' actions and the subsequent prosecution. The district court thought this element insufficiently pleaded because "it was not the United States that prosecuted [Alexander] in state court," but Indiana cases confirm that a person may "cause" an action to be instituted for purposes of malicious prosecution even if that person does not conduct the prosecution personally. See *Kroger Food Stores, Inc. v. Clark*, 598 N.E.2d 1084, 1086-87 (Ind. Ct. App. 1992) (affirming verdict in favor of plaintiff in a malicious prosecution case against employer that caused employee to be prosecuted for theft); *F.W. Woolworth Co. v. Anderson*, 471 N.E.2d 1249, 1253 (Ind. Ct. App. 1984) (first element of malicious prosecution claim "absolutely clear" when defendants prompted prosecution by reporting alleged theft to local prosecutor, who then instituted prosecution).

The complaint also adequately alleges that Alexander was prosecuted in the absence of probable cause. It states that the probable-cause affidavit that served as

the basis for Alexander's arrest and prosecution was based on fabricated evidence and excluded evidence that favored Alexander. Knowingly false statements by the affiant cannot support a finding of probable cause, and as we read the complaint, that is all there was. Accord *K Mart Corp. v. Brzezinski*, 540 N.E.2d 1276, 1280 (Ind. Ct. App. 1989) (while a judicial determination of probable cause is *prima facie* evidence of probable cause in a subsequent malicious prosecution suit, that evidence is rebutted if the judicial determination is made in reliance on false information). Although the district court may have assumed that there was other, non-tainted evidence against Alexander, such an assumption is not supported by anything in the complaint. Although we acknowledge that Alexander nowhere explicitly alleged that the probable cause affidavit was based entirely on tainted information, that is a fair inference from what the complaint does say, and at this stage we are required to draw all reasonable inferences in Alexander's favor.

Finally, the complaint adequately pleads malice. In *Ziobron v. Crawford*, 667 N.E.2d 202 (Ind. Ct. App. 1996), the Indiana Court of Appeals held that "[m]alice may be inferred from a total lack of probable cause." *Id.* at 208 (citing *Bd. of Comm'rs of Hendricks Cnty. v. King*, 481 N.E.2d 1327, 1329 (Ind. Ct. App. 1985) ("Malice may be inferred from a total lack of probable cause or from failure to make a reasonable or suitable inquiry.")); *see also Kroger Food Stores*, 598 N.E.2d at 1089. This is not to say that such an inference cannot be rebutted at a later stage of the proceeding. Lack of probable cause might

be the result of stupidity or carelessness, rather than malice or recklessness. But Alexander was not required to anticipate this type of defense in his complaint. In any event, the allegations about the feud between McKinney and Alexander also provide notice of Alexander's reasons for believing that malice was present. For purposes of pleading, this is enough.

The district court faulted Alexander for failing to include any allegations that the agents harbored personal animosity toward him. This failure, it thought, undercut Alexander's allegations of malice, but the court's comment may also have reflected a more general unease that the pattern of events described in the complaint was, at bottom, not "plausible." The notion that federal agents would participate in a retaliatory prosecution by fabricating evidence and committing perjury is surely a shocking one, and the district court may simply have found the allegations too difficult to credit, at least absent additional allegations to suggest some sort of motive. But Rule 8 does not demand that a plaintiff prove his case at the outset of the litigation, nor does it demand that a plaintiff come to court ready to plead facts (such as the motivations of agents Freeman and Howell) that he has no way of knowing prior to discovery. And none of Alexander's allegations pulled him into the territory covered by the first sentence of Rule 9(b), which does require more specificity. (The second sentence helps Alexander: it provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.") While we agree that Alexander's tale would undoubtedly

seem more *probable* if he offered some reason for the agents' animus (for example, an allegation that Freeman was romantically involved with Alexander's wife or that Howell owed money to prosecutor McKinney, who, according to the complaint, did have a motive for framing Alexander), probability is not the standard. Unfortunately, in a world where public corruption is hardly unknown, we cannot agree that Alexander's complaint is too implausible to hold together absent allegations of this sort. We might wish to live in a world in which such an egregious abuse of one's official position would be unthinkable, but experience suggests that we do not. See, *e.g.*, *Dominguez v. Hendley*, 545 F.3d 585, 589-90 (7th Cir. 2008); *United States v. Maloney*, 71 F.3d 645, 650-52 (7th Cir. 1995). We conclude that the complaint for malicious prosecution sets forth enough plausible detail to provide adequate notice to the defendants and thus to survive a 12(b)(6) motion to dismiss.

B

The complaint further alleges that the agents' actions amounted to intentional infliction of emotional distress (IIED), which Indiana law defines as "extreme and outrageous conduct [that] intentionally or recklessly causes severe emotional distress to another." *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991). Like all claims under the FTCA, Alexander's IIED claim is subject to a two-year statute of limitations. 28 U.S.C. § 2401(b). Relying on the general principle that a claim accrues when: "(A) the plaintiff discovers; or (B) a reasonable person in the plain-

tiff's position would have discovered that he has been injured by an act or omission attributable to the government," *Arroyo v. United States*, 656 F.3d 663, 668 (7th Cir. 2011), the district court concluded that the claim was time-barred. The court reasoned that Alexander must have known that he had been framed at the time of his arrest in February 2008, and that even if he was not immediately aware that the trumped-up bribery charges were attributable to the FBI agents (and thus the federal government), he must have realized this no later than July 2008, when Freeman falsely stated in a deposition that exculpatory evidence from Alexander's July 2006 meeting with Kirtz and Chrisp did not exist. Yet Alexander did not file his Notice of Tort Claim with the FBI until October 2010, more than two years after Freeman's deposition. (Alexander did file his Notice of Tort Claim within two years of his acquittal, which occurred in March 2009. For this reason, his malicious prosecution claim—which did not accrue until the charges in the criminal case were resolved in his favor—was timely.)

Though we have no quarrel with the district court's conclusion that Alexander knew or should have known by the time of Freeman's July 2008 deposition that agents of the federal government potentially caused his injury, it does not follow from this that Alexander's IIED claim is untimely, because the agents' alleged extreme and outrageous conduct did not cease with either Alexander's arrest or Freeman's deposition. Rather, the complaint alleges that the tortious conduct—which included witness intimidation, perjury, and suborning of

perjury—continued right through Alexander's trial. Any one of these later actions might suffice to provide the basis for a timely IIED claim. (We make no comment on any other possible bar to an IIED claim based on a witness's trial testimony, because the time for considering such arguments never arrived in the district court.) The complaint gives no reason for confining the IIED analysis to events leading up to Alexander's arrest. In situations such as this, where the alleged injury can be characterized as a continuing one, federal claim-accrual rules (which govern in cases arising under the FTCA, *id.*) dictate that the statute of limitations "does not start to run *any earlier* than the last day of the ongoing injury." *Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013) (emphasis in original); see also *Heard v. Sheahan*, 253 F.3d 316, 318-19 (7th Cir. 2001) (discussing the federal "continuing violation" doctrine). And even if the continuing violation doctrine has been modified by cases such as *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), and *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), Alexander has alleged many specific events that fall well within the applicable limitation period. Regardless of whether we view the agents' conduct as a continuing wrong or as a series of discrete, independently actionable harms, some of which occurred within the limitation period, we conclude that Alexander's IIED claim is timely.

All that remains is for us to determine whether the complaint adequately states a claim for IIED. We conclude that it does. The conduct described in the complaint is extreme and outrageous (as well as criminal),

and there are sufficient allegations to support the inferences both that this conduct was intended to cause Alexander severe emotional distress and that Alexander suffered such emotional distress as a result of his ordeal. Mindful of the relatively low bar Alexander is required to clear at this preliminary stage of his case, we conclude that the IIED claim is also sufficient to pass muster under Rule 12(b)(6).

Accordingly, we REVERSE the district court's judgment dismissing Alexander's claims for malicious prosecution and intentional infliction of emotional distress and REMAND for further proceedings consistent with this opinion.