In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 15-3569

LISA ALLEN and MISTY DALTON,

*Plaintiffs-Appellants*,

*v.*

GREATBANC TRUST CO.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 3053 — **James B. Zagel**, *Judge.*

_____

ARGUED APRIL 12, 2016 — DECIDED AUGUST 25, 2016

_____

Before WOOD, *Chief Judge,* and FLAUM and WILLIAMS, *Circuit Judges*.

WOOD, *Chief Judge*. GreatBanc is the fiduciary for an employee stock ownership plan ("the Plan") for employees of Personal-Touch, a home-health-care company. In that role, it facilitated a transaction in which the Plan purchased a number of shares in the company with a loan from the company itself. Unfortunately, the shares turned out to be worth much

less than the Plan paid, leaving the Plan with no valuable as-
sets and heavily indebted to the company's principal share-
holders. The Plan's participants, all employees of Personal
Touch, wound up being on the hook for interest payments on
the loan. Employees Lisa Allen and Misty Dalton brought this
action under section 502 of the Employee Retirement Income
Security Act (ERISA), 29 U.S.C. § 1132, raising two theories of
recovery: first, that GreatBanc engaged in transactions that
section 406 of ERISA prohibits, see 29 U.S.C. § 1106; and sec-
ond, that GreatBanc breached its fiduciary duty under ERISA
section 404, 29 U.S.C. § 1104, by failing to secure an appropri-
ate valuation of the Personal-Touch stock. The district court
initially dismissed the complaint without prejudice, but it
later converted the judgment to one with prejudice after
plaintiffs opted not to amend their complaint. Because the
plaintiffs plausibly alleged both a prohibited transaction and
a breach of fiduciary duty, we reverse the judgment of the dis-
trict court and remand for further proceedings.

# I

At this stage, we present the facts as alleged in the com-
plaint in the light most favorable to plaintiffs. Employee stock
ownership plans (ESOPs) are meant to be a way for compa-
nies to provide employees with a stake in the enterprise. See
29 U.S.C. § 1002. Personal-Touch, a privately held entity, is the
sponsor of the Plan at issue here. See 29 U.S.C. § 1002(16)(B).
Sponsors are responsible for administering ESOPs and often
appoint independent trustees to carry out that job. Personal-
Touch appointed GreatBanc as Trustee of the Plan in 2010 for
the purpose of representing the Plan in the proposed stock-
purchase transaction.

On December 9, 2010, GreatBanc instructed the Plan to acquire an unknown amount of stock from Personal-Touch's shareholders for $60 million. Before this acquisition, Personal-Touch's principal shareholders owned 100 percent of its shares. The plaintiffs do not know whether GreatBanc hired any financial advisors to review the transaction. The principal shareholders arranged for the Plan to finance this transaction through a loan they gave to the Plan at a 6.25% interest rate; the record does not reveal why the Plan did not use outside funding.

The ink was hardly dry on the acquisition papers when the value of Personal-Touch's stock began to tank. Twenty-two days later, the complaint asserts and GreatBanc accepts for present purposes, the Plan's stock was estimated to be worth some $13 million (almost 22%) less than what the Plan paid for it. By late 2011, the estimated value of the stock had declined by almost 50%, and by December 31, 2013, the Plan's shares were worth only around $26.6 million. The selling shareholders, however, were relatively untouched by these developments. Rather than holding a rapidly depreciating asset in the form of the stock, they had become creditors of the Plan (and thus indirectly the employees) and the recipients of a secure flow of principal and interest payments on the original $60 million loan. The plaintiffs felt that they had drawn the short straw: they sued GreatBanc, alleging that it violated its fiduciary responsibilities under ERISA by approving a purchase of stock at too high a price and by facilitating two prohibited transactions: (1) the Plan's purchase of stock from the company, and (2) the loan to the Plan that funded the purchase. See 29 U.S.C. § 1106(a) and (b).

The complaint alleges that GreatBanc did not conduct any inquiry into whether whoever was responsible for Personal-Touch's financial projections had a conflict of interest, did not undertake an independent investigation of Personal-Touch's revenues, and failed to seek any remedy for the overpayment for the stock. The complaint originally alleged that 4.25% was the customary interest rate for an ESOP transaction such as the one that took place, but it retracted that detail in sur-reply. Last, the complaint notes that GreatBanc entered into a settlement with the Department of Labor in 2014 (after the transaction), binding it to specific policies and procedures for analyzing stock valuation in ESOP transactions; the settlement, plaintiffs imply, was designed to address its record of shortcomings as a fiduciary.

The district court dismissed the complaint, finding that the plaintiffs had not sufficiently pleaded breach of fiduciary duty according to the standard outlined in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014). *Dudenhoeffer* held that "*where a stock is publicly traded*, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances." *Id*. at 2471 (emphasis added). A plaintiff in this type of case must therefore point to those "special circumstances" in her complaint, in order to survive a motion to dismiss. Believing that this rule applied and that no special circumstances existed, the district court dismissed the breach-of-fiduciary-duty claim. It rejected the prohibited-transaction claim for much the same reason, finding that the question whether the Plan paid a fair price for the stock was not properly alleged.

**II**

We apply the usual *de novo* standard of review to the district court's rulings and accept the facts as alleged for present purposes. *Wilczynski v. Lumbermens Mut. Casualty Co.*, 93 F.3d 397, 401 (7th Cir. 1996); *Alexander v. United States*, 721 F.3d 418, 423 (7th Cir. 2013). No heightened pleading standard applies here; it is enough to provide the context necessary to show a plausible claim for relief. See *Dudenhoeffer*, 134 S. Ct. at 2471 (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 677–80 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007)). We consider first the plaintiffs' prohibited-transaction argument, and then their broader claim for breach of fiduciary duty.

A

ERISA identifies a number of transactions that are flatly prohibited between a plan and a party in interest, or a plan and a fiduciary. See ERISA § 406, 29 U.S.C. § 1106. The provision at issue here are the prohibitions in section 406(a), which provides as follows:

> Except as provided in section 1108 of this title:
>
> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect–
>
> > (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
> >
> > (B) lending of money or other extension of credit between the plan and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

(2) No fiduciary who has authority or discretion to control or manage the assets of a plan shall permit the plan to hold any employer security or employer real property if he knows or should know that holding such security or real property violates section 1107(a) of this title.

29 U.S.C. § 1106(a). The exceptions found in section 408, 29 U.S.C. § 1108, include the acquisition of employer stock if it is for "adequate consideration." 29 U.S.C. § 1108(e)(1). Section 408(b)(3) exempts a loan to an ESOP if the loan is primarily for the benefit of plan participants and beneficiaries and at an interest rate "not in excess of a reasonable rate." 29 U.S.C. § 1108(b)(3).

The complaint alleges a purchase of employer stock by the Plan and a loan by the employer to the Plan, both of which are indisputably prohibited transactions within the meaning of section 406. GreatBanc can prevail only if it can take advantage of one of section 408's exemptions. It never raised any such affirmative defense, however; it took the position instead that the plaintiffs have the burden of pleading facts that

would *negate* the applicability of section 408's exemptions and that they failed to do so. Plaintiffs counter that GreatBanc had the burden of both pleading and proving the applicability of a section 408 exemption.

The district court noted, correctly, that GreatBanc would carry the burden at trial of proving that the Plan had paid adequate consideration for the Personal-Touch stock. But at that point, it jumped ahead and found that both the prohibited-transaction and the fiduciary-breach claim would turn on the same question: whether the Plan paid a fair price for the stock. It found the complaint deficient on that point, criticizing it for failing adequately to allege that the interest rate provided by Personal-Touch was unreasonable. This, it concluded, was fatal to both theories plaintiffs were presenting.

There are a number of problems with this approach, but we will focus primarily on the procedural ones. A plaintiff alleging a claim arising out of a prohibited transaction involving an exchange of stock between a plan and a party in interest need not plead the absence of adequate consideration, and so here plaintiffs were under no obligation to say anything about the interest rate on the inside loan GreatBanc received from the stockholders. It was enough that the transaction was a prohibited one; fair consideration enters the picture only through section 408(b)(3) and (e)(1).

GreatBanc defends the district court's reasoning by blending plaintiffs' two theories together. It argues (on the assumption that the fiduciary-duty claim is inadequate) that allowing a prohibited-transaction claim to proceed based on the same facts as a dismissed fiduciary-breach claim would cause the "perverse result … [that] a complaint may fail to state suffi-

cient facts to support a breach of fiduciary duty claim, yet survive a motion to dismiss as to a companion prohibited transaction claim notwithstanding those same deficient facts." But there is nothing perverse about this at all. Congress saw fit in ERISA to create some bright-line rules, on which plaintiffs are entitled to rely. Nothing compelled Congress to mimic the common law of breach of fiduciary duty in the statute.

More fundamentally, an ERISA plaintiff need not plead the absence of exemptions to prohibited transactions. It is the defendant who bears the burden of proving a section 408 exemption, *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 685 (7th Cir. 2014); *Keach v. U.S. Trust Co.*, 419 F.3d 626, 633 (7th Cir. 2005), and the burden of pleading commonly precedes the burden of persuasion. See *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (burden of pleading defense rests with the defendant). The fact that this court may not have had the occasion to label the section 408 exemptions as affirmative defenses is of no moment. GreatBanc itself argued in *Fish* that section 408 exemptions are affirmative defenses, and therefore a plaintiff need not have actual knowledge of facts constituting a section 408 exemption in order for the statute of limitations to begin running. Evidently it has had a change of heart in this case, but it was right the first time. We now hold squarely that the section 408 exemptions are affirmative defenses for pleading purposes, and so the plaintiff has no duty to negate any or all of them. See *Stuart v. Local 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014) ("A plaintiff is not required to negate an affirmative defense in his or her complaint[.]").

Five of our sister circuits agree with the position that section 408 exemptions are affirmative defenses, or that the defendant bears the burden of proof, or both. See *Braden v. Wal-*

*Mart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009) ("[A] plaintiff need not plead facts responsive to an affirmative defense before it is raised[.]"); *Harris v. Amgen, Inc.*, 788 F.3d 916, 943 (9th Cir. 2015), *rev'd on other grounds*, 136 S. Ct. 758 (2016) ("[T]he existence of an exemption under § 1108(e) is an affirmative defense[.]"); *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 864 (4th Cir. 1994) (proper allocation of § 408 burden waived by plaintiffs by not raising at trial); *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1215 (2d Cir. 1987) (burden on fiduciary to prove exemption); *Donovan v. Cunningham*, 716 F.2d 1455, 1467–68 (5th Cir. 1983) ("[W]e hold that the ESOP fiduciaries will carry their burden to prove that adequate consideration was paid[.]"). Although some of these decisions from other circuits predate *Twombly* and *Iqbal*, *Dudenhoeffer* post-dates those cases and makes it clear that there is no special pleading regime for this part of ERISA.

GreatBanc attempts to differentiate the section 408 exemptions from affirmative defenses by reference to *Twombly*'s distinction between an affirmative defense and an "obvious alternative explanation." *Twombly*, 550 U.S. at 567. In the latter case, the plaintiff needs to include enough to dispel the alternative story (or more accurately, to indicate that a rational trier of fact could so find). But the exemptions from prohibited transactions do not provide alternative explanations; they assume that a transaction in the prohibited group occurred, and they add additional facts showing why that particular one is acceptable. That is how affirmative defenses work. In our case, it would make little sense to characterize payment of a fair price for employer stock or lending money to the Plan at a reasonable interest rate as an "obvious alternative explanation," rather than as an additional fact justifying the otherwise troublesome deal.

GreatBanc's last argument here is an appeal to policy: it argues that there will be a flood of prohibited-transaction litigation if all that must be alleged is the occurrence of a section 406 transaction. This strikes us as overwrought. Rational plans will sue only when (taking Rule 11 constraints into account, among others) there is a reason to do so. If an ESOP transaction is successful, employees who have invested in the ESOP will not have any motive to bring an ERISA lawsuit over the exchange of stock between the company and the Plan. If it fails, they are likely to give it closer scrutiny, but not all failures stem from ERISA violations. A district court has ample tools to screen frivolous claims, and the *Twombly-Iqbal* pleading standards require the plaintiffs to cross the line from the "possible" violation to the "plausible."

GreatBanc fears that our holding will allow a suit any time a trustee so much as purchases something as trivial as a chair for a person to sit in, or pays a financial adviser for investment advice. But why would a beneficiary sue the trustee over a chair? And a beneficiary would have reason to sue over investment advice only if she had no reason to believe the transaction was exempt under section 408; otherwise, it would be a waste of time and resources. As the attorney for *amicus curiae* Department of Labor pointed out at oral argument, potential plaintiffs' cost-benefit analyses will also weigh against bringing suits where the plaintiff cannot point to any actual harm that was caused by the prohibited transaction. Sanctions under Federal Rule of Civil Procedure 11 serve as an additional deterrent against obviously exempt prohibited-transaction claims.

If there is an administrative problem to be worried about, it is the chance that courts would start requiring plaintiffs to

negate all section 408 exemptions in their complaints. Pleading the absence of the exemption in subsection (b)(19), for example, would be particularly burdensome: it exempts "cross trading" between a plan and an account managed by the same investment manager where nine specific conditions are met, some of which have further exceptions contained within them. 29 U.S.C. § 1108(b)(19). Requiring a plaintiff to demonstrate that subsection (b)(19) is *not* met in order to bring a prohibited-transaction claim would prematurely defeat many claims where the plaintiffs lack access to detailed information about the plan manager's dealings with other entities. Although GreatBanc contended at oral argument that it is a Rule 11 violation "not to even ask" a defendant for information about, for instance, how stock was valued, we find it implausible that any would-be defendant would voluntarily turn over confidential financial information of that kind without the protections of the discovery process. We decline to add a pre-pleading requirement that plaintiffs ask nicely for information they need—but cannot compel access to—before filing their complaint.

ERISA is a "remedial statute to be liberally construed in favor of employee benefit fund participants." *Kross v. W. Elec. Co., Inc.*, 701 F.2d 1238, 1242 (7th Cir. 1983). Section 408 exemptions are affirmative defenses for the defendant, not items that a prohibited-transaction plaintiff must address in her complaint.

## B

In order to state a claim for breach of fiduciary duty under ERISA, the plaintiff must plead "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff."

*Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010) (citing *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007)). The first and third elements are not at issue here; we need address only whether the plaintiffs sufficiently pleaded breach. The facts alleged must "provide sufficient detail to present a story that holds together." *Alexander*, 721 F.3d at 422 (internal quotation marks omitted).

ERISA imposes duties of loyalty and prudence on a plan fiduciary. 29 U.S.C. § 1104(a)(1)(A)–(B). Loyalty requires a fiduciary to act "for the exclusive purpose" of providing benefits to participants. *Id*. ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries[.]"). Prudence requires the fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id*. This includes choosing wise investments and monitoring investments to remove imprudent ones. *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828–29 (2015). In order to assess the prudence of the fiduciary's actions, they must be evaluated in terms of both procedural regularity and substantive reasonableness. *Fish*, 749 F.3d at 680.

1

The central allegation in the present complaint is that GreatBanc failed to conduct an adequate inquiry into the value of Personal-Touch's stock. See *Armstrong v. LaSalle Bank Nat. Ass'n*, 446 F.3d 728 (7th Cir. 2006) (reversing district court summary judgment order on triable issue of fact of whether ESOP trustee exercised prudence in stock valuation for purposes of setting a redemption price). Although the plaintiffs

could not describe in detail the process GreatBanc used, no such precision was essential. It was enough to allege facts from which a factfinder could infer that the process was inadequate. As the Eighth Circuit explained in *Braden*, a district court errs in making the "assumption that [the plaintiff] was required to describe directly the ways in which appellees breached their fiduciary duties"; rather, it is "sufficient for a plaintiff to plead facts indirectly showing unlawful behavior." 588 F.3d at 595. This is particularly true in ERISA cases because "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Id*. at 598. We agree with the Eighth Circuit: an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story.

The plaintiffs met this burden: they alleged that the stock value dropped dramatically after the sale (implying that the sale price was inflated), that the loan came from the employer-seller rather than from an outside entity (indicating that outside funding was not available), and that the interest rate was uncommonly high (implying that the sale was risky, or that the shareholders executed the deal in order to siphon money from the Plan to themselves). These facts support an inference that GreatBanc breached its fiduciary duty, either by failing to conduct an adequate inquiry into the proper valuation of the shares or by intentionally facilitating an improper transaction.

This was enough to permit the plaintiffs to move ahead with their case. GreatBanc remains free to move for summary judgment after discovery on the grounds that its process for conducting a valuation of the stock was adequate. It can also

argue that a fiduciary need not be prescient about future stock-value movements. See *DeBruyne v. Equitable Life Assurance Soc'y of the United States*, 920 F.2d 457, 465 (7th Cir. 1990). But plaintiffs will be free to compare whatever steps Great-Banc actually took with the procedures that a prudent fiduciary would use.

GreatBanc's (and the district court's) reliance on *Dudenhoeffer* is unwarranted. In *Dudenhoeffer*, the Supreme Court held that ERISA fiduciaries conducting ESOP transactions can generally prudently rely on the market value of *publicly traded* stock, absent special circumstances. *Dudenhoeffer*, 134 S. Ct. at 2471. The Court suggested that the special circumstances might include something like available public information tending to suggest that the public market price did not reflect the true value of the shares. *Id*. at 2472. As we have just emphasized, however, the Court's holding was limited to publicly traded stock and relies on the integrity of the prices produced by liquid markets. Private stock has no "market price," for the obvious reason that it is not traded on any public market. The transaction between Personal-Touch and the Personal-Touch ESOP was an exchange involving only private stock. There is no market price to explain away, and so no reason to apply any "special circumstances" rule. Additionally, another part of *Dudenhoeffer*'s rationale—the need to protect fiduciaries from running up against insider trading law by relying on non-public information for stock valuation—has no application to the private stock context.

GreatBanc responds that *Dudenhoeffer*'s rationale should be extended to the private-stock situation because "an unbiased, independent trustee['s]" assessment of the value of stock is at least as reliable as the stock market's, and therefore

the special circumstances pleading requirement should apply to private stock as well. But saying so does not make it so, and GreatBanc has assumed things that may or may not be true in a particular case. Was the trustee unbiased? Was it independent? Did it have solid data behind its assessment? None of those questions is important in the case of public markets; all of them and more are for private holdings. The inference from the plaintiffs' complaint is that GreatBanc did not rely on an unbiased, independent assessment, nor did it use an assessment that started with a trustworthy benchmark. We note as well that the Secretary of Labor, although he takes no position on the question whether the facts pleaded here are sufficient to allege a breach of fiduciary duty, urges that *Dudenhoeffer* does not apply to sales of non-public shares.

The district court said that in order for the complaint to survive, the plaintiffs needed to allege "special circumstances regarding, for example, a specific risk a fiduciary failed to properly assess." *Allen v. GreatBanc Trust Co.*, No. 15 C 3053, 2015 WL 5821772, at *3 (N.D. Ill. Oct. 1, 2015). There is no support, however, for such a stringent pleading requirement. All the plaintiff must do is to plead the breach of a fiduciary duty, such as prudence, and to explain how this was accomplished. Plaintiffs here accused GreatBanc of failing to conduct an independent assessment of the value of stock and relying instead on an interested party's number. This is enough to give notice of the claim and to allow the suit to proceed.

2

GreatBanc maintains that the facts on which plaintiffs rely—the post-transaction decline in stock value and the 6.25% interest rate—are equally consistent with acceptable performance and breach of fiduciary duty and so not enough

under *Twombly* and *Iqbal*. If drop in price were enough, Great-Banc argues, every ESOP transaction where there was any decline in value after the transaction would be subject to suit. But the complaint says more than this. It alleges that Great-Banc did not engage in a reasonable and prudent process, and notes in particular the absence of outsider financing (or any other objective benchmark of pricing) for the deal.

While the plaintiffs originally claimed that GreatBanc was aware that 4.25% was the customary interest rate for a transaction of the kind it was facilitating, they retracted that specific number in their sur-reply, which said more generally that the 6.25% interest rate was exorbitant. This was not such an outlandish allegation that it could be dismissed out of hand. We note that on December 15, 2010, the Federal Reserve prime interest rate was 3.25%. See [https://www.comptroller.tn.gov/shared/pdf/interesttable.pdf](https://www.comptroller.tn.gov/shared/pdf/interesttable.pdf). That aside, the retraction of the specific number is unimportant. At this stage, we are obliged to take as true the plaintiffs' alleged facts in determining the sufficiency of the complaint, and one of the alleged facts is that the interest rate on the loan from the principal shareholders was unreasonably high. The district court should not have dismissed this claim as "conclusory," because this was a factual claim, not a legal one. If the plaintiffs are unable after discovery to show that the rate was indeed high, GreatBanc may be entitled to summary judgment (though that will depend on the entire record at that time).

GreatBanc argues that the post-transaction decline in stock value is precisely what economists predict should happen after an ESOP transaction, and therefore it is not evidence of fiduciary breach. But whether the 22% decline in value—a decline that lasted not months but years and ballooned to nearly

50%—was the result of normal economic forces or something more sinister is a matter for a later stage of litigation. We need not answer whether *any* post-ESOP transaction decline in stock value is enough for a complaint; the decline here was significant and accompanied by other indications of a breach of fiduciary duty.

## C

We note, finally, that the 2014 settlement agreement between GreatBanc and the Department of Labor, in which GreatBanc agreed to a specific set of policies and procedures for analyzing stock valuation in ESOP transactions because of its history of failing properly to execute its fiduciary duties, has no effect on the motion to dismiss. GreatBanc points out that a settlement agreement is sometimes just a rational business decision and not an admission of any wrongdoing, that the complaint does not identify what the agreed-upon policies and procedures were, and that the complaint does not allege that GreatBanc was not previously following those policies and procedures.

Even though it may seem odd for a party to enter into a settlement agreement in which it undertakes to do exactly what it has been doing, that is neither here nor there at this stage. The plaintiffs would like to use the agreement as evidence from which an absence of prudence could be inferred, but the plaintiffs do not need such particular evidence yet. We leave it to the district court to determine, if and when necessary, whether the settlement is admissible for evidentiary purposes.

### III

Because the district court erred in dismissing the plaintiffs' claims of breach of fiduciary duty and prohibited transactions in violation of ERISA, we REVERSE its judgment and REMAND for additional proceedings consistent with this opinion.