In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-2374

W. A. GRIFFIN, M.D.,

*Plaintiff-Appellant*,

*v.*

TEAMCARE, a Central States Health Plan, and TRUSTEES OF THE
CENTRAL STATES, Southeast and Southwest Areas Health and
Welfare Fund,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 C 1772 — **Robert W. Gettleman**, *Judge*.

ARGUED NOVEMBER 15, 2018 — DECIDED NOVEMBER 26, 2018
— AMENDED NOVEMBER 30, 2018

Before BAUER, KANNE, and ST. EVE, *Circuit Judges*.

PER CURIAM. W.A. Griffin, M.D., is the assignee of her pa-
tient's health plan, TeamCare, which the Board of Trustees of
Central States, Southeast and Southwest Areas Health and
Welfare Fund (collectively Central States) administers and the
Employee Retirement Income Security Act (ERISA), 29 U.S.C.

§§ 1001–1461, governs. Dr. Griffin sued Central States for underpayment and for statutory penalties based on its failure to furnish plan documents upon request. The district court dismissed her complaint. However, because we find that Dr. Griffin adequately alleged that she is eligible for additional benefits and statutory damages, we affirm the judgment only as to Count 2, vacate the judgment as to Counts 1 and 3, and remand Counts 1 and 3 for further proceedings.

## I. BACKGROUND

We recite the facts as alleged in the complaint. *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 673 (7th Cir. 2016). Dr. Griffin, a dermatologist and surgeon, provided medical care to T.R., a participant in a Central States health plan. (Blue Cross Blue Shield is a third-party administrator of that plan.)

Before receiving treatment, T.R. assigned to Dr. Griffin the rights under the plan to "pursue claims for benefits, statutory penalties, [and] breach of fiduciary duty … ." Dr. Griffin confirmed through a Central States representative that the plan would pay her for the treatment at the usual, reasonable, and customary rate, as section 11.09 of the plan document provides.* Dr. Griffin then treated T.R. and submitted a claim for $7,963, which she says is the applicable usual and customary rate, but Central States underpaid her by $5,014.

Dr. Griffin challenged the benefits determination. She wrote to Central States in February 2017, arguing that she received less than the usual, reasonable, and customary rate

---

* Dr. Griffin did not attach the plan document to her complaint, but we may consider it because Central States included it in its motion to dismiss, Dr. Griffin referenced it in her complaint, and it is central to her claim. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018).

promised in section 11.09. She also asked for a copy of the summary plan description and the documents used to determine her payment, like rate tables and fee schedules.

Six months later, Central States responded. It explained that Data iSight, a third party, used "pricing methodology" to determine Dr. Griffin's fee. It advised her to negotiate with Data iSight before engaging in the two-step appeals process that the plan required her to complete before she could bring a civil suit. (Dr. Griffin missed a call from Data iSight about negotiating a settlement; Dr. Griffin returned the call and left a voicemail explaining that she "would not take any reductions on the amount owed," and Data iSight never called her back.) Central States also provided a copy of the summary plan description, but no fee schedules or tables.

According to Dr. Griffin, "At this point, [she] had exhausted appeals." She called the six-month delay before she heard back from Central States "unreasonable." "The appeals process is a fake process designed to waste time," she continued. "Heading straight to court sooner as opposed to later is the correct course of action."

Dr. Griffin sued Central States under ERISA, which authorizes plan participants or beneficiaries to sue for benefits due and equitable relief. 29 U.S.C. § 1132(a)(1)(B), (a)(3). Plan administrators also may be liable to a participant or beneficiary for up to $100 per day for not furnishing plan documents or "instruments under which the plan is established or operated" within 30 days of his or her request. *Id.* at §§ 1024(b)(4), 1132(c)(1).

Dr. Griffin alleged that Central States did not pay her the proper rate for her services under section 11.09 of the plan

(Count 1); breached its fiduciary duty by not adhering to the plan's terms (Count 2); and failed to produce, within 30 days, the requested summary plan description, Data iSight's fee schedules, or Central States's contract with Blue Cross Blue Shield (Count 3).

Central States moved to dismiss Dr. Griffin's complaint, and the district court granted the motion. The court determined that Dr. Griffin failed to state a claim for unpaid benefits because she did not identify a specific plan provision that covered the services provided, i.e., one that "confer[s] benefits," which the court said was required under *Clair v. Harris Tr. & Sav. Bank*, 190 F.3d 495, 497 (7th Cir. 1999). It dismissed the claim for a breach of fiduciary duty for the same reason and because it duplicated the claim for benefits. Finally, because Dr. Griffin is an assignee and statutory penalties are available only to "participants or beneficiaries," the court concluded that she failed to state a claim for those too.

## II. ANALYSIS

We review the district court's judgment de novo. *Allen*, 835 F.3d at 674. To state a claim, Dr. Griffin needed to plead only a short and plain statement presenting a plausible basis for relief. *See* FED. R. CIV. P. 8(a); *Smith v. Med. Benefit Adm'rs Grp., Inc.*, 639 F.3d 277, 281 (7th Cir. 2011). No heightened pleading standard applies. *Allen*, 835 F.3d at 674. We analyze each of Dr. Griffin's three purported claims in turn.

*Count 1: Damages for Unpaid Benefits, 29 U.S.C. § 1132(a)(1)(B)*

Dr. Griffin challenges the district court's ruling that she did not state a claim for unpaid benefits. She argues that she adequately plead that the plan covered the medical treatment

she provided T.R. and that she did not need to cite in her complaint a plan provision establishing coverage at the amount she billed.

We agree. "[P]laintiffs alleging claims under 29 U.S.C. § 1132(a)(1)(B) for plan benefits need not necessarily identify the specific language of every plan provision at issue to survive a motion to dismiss under Rule 12(b)(6)." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga, Inc.*, 892 F.3d 719, 729 (5th Cir. 2018). True, Dr. Griffin was entitled only to benefits that were specified in the plan. *See Clair*, 190 F.3d at 497. But that does not mean that she was required to plead the specific terms establishing coverage. Dr. Griffin alleged that a Central States representative told her that the plan would honor the assignment from T.R. and process her claim for the medical care she provided. Central States never suggested (and does not suggest on appeal) that the plan did not cover the services. And Dr. Griffin alleged that the plan paid her *something*; this renders plausible her allegations her services *were* covered, and she was entitled to compensation. *See Hess v. Hartford Life and Accident Ins. Co.*, 274 F.3d 456, 462 (7th Cir. 2001) ("Plan administrators cannot randomly pay benefits to individuals not entitled to them."). Requiring that Dr. Griffin allege provisions to support something that is undisputed—the existence of coverage—was error.

Dr. Griffin likewise did not need to name a provision entitling her to greater reimbursement than what the plan paid. In its motion to dismiss, Central States properly understood that Dr. Griffin alleged that the plan "underpriced and underpaid her claim," but it argued that she had to point to a plan provision allowing her "greater payment." Dr. Griffin, how-

ever, alleged that Central States did not pay her the usual, reasonable, and customary rate, which is what she says she charged and what section 11.09 of the plan requires. To require her to be more specific is to turn notice pleading on its head. Indeed, as discussed later, Dr. Griffin did not have the information necessary to allege with more detail where the plan's calculation of the usual and customary rate went astray.

Last, Central States included in its brief an unsupported assertion that Dr. Griffin's failure to exhaust her administrative remedies warranted affirmance. Because it did not develop this argument, it is waived on appeal. *See* FED. R. APP. P. 28(a)(8), (b); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n. 1 (7th Cir. 2004). Should it raise the affirmative defense on remand, we note, Dr. Griffin's allegations raise the probability that any failure to exhaust may have been excused. *See Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 403 (7th Cir. 1996).

*Count 2: Breach of Fiduciary Duty, 29 U.S.C. § 1132(a)(3)*

Dr. Griffin next challenges the dismissal of her claim that Central States breached its fiduciary duty. But Dr. Griffin does not contest the district court's dismissal of her second claim as duplicative of the first. Equitable relief under section 1132(a)(3) is available only when Congress did not provide relief elsewhere. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 804–05 (7th Cir. 2009). Section 1132(a)(1)(B) offers damages, so equitable relief is not available for the same conduct.

*Count 3: Statutory Penalties, 29 U.S.C. § 1132(c)(1)*

Finally, Dr. Griffin argues that as T.R.'s assignee, she is a beneficiary of the plan, eligible for statutory penalties based on Central States's failure to provide the documents she requested within 30 days. *See* 29 U.S.C. §§ 1024(b)(4), 1132(c)(1). Central States takes the position, supported by one citation to a district-court decision, that an assignee does not step into a beneficiary's shoes for the purpose of enforcing statutory penalties. *See Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, 221 F. Supp. 3d 853, 860 (S.D. Tex. 2016). Thus, Central States concludes, it could not be liable for not timely providing documents to Dr. Griffin.

But in *Neuma, Inc. v. AMP, Inc.*, we remanded to the district court for a determination of whether penalties should be awarded to an assignee under section 1132(c)(1), thus assuming that assignees could seek penalties. 259 F.3d 864, 878–79 (7th Cir. 2001). Central States's position is inconsistent with our prior precedent and is contrary to the purposes of a plenary assignment of rights under the plan. ERISA defines "beneficiary" as "a person designated by a participant … who is or may become entitled to a benefit [under an employee benefit plan]." 29 U.S.C. § 1002(8). An assignee designated to receive benefits is considered a beneficiary and can sue for unpaid benefits under section 1132(a)(1)(B)—something the plan does not dispute. *See Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991).

Bringing that suit (or an administrative appeal) requires access to information about the plan and its payment calculations—here, how Central States determined the usual, reasonable, and customary rate. *Mondry*, 557 F.3d at 808; *see also Fire-*

*stone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (disclosure ensures that "the individual participant knows exactly where he stands with respect to the plan" (citing H.R.Rep. No. 93–533, p. 11 (1973), U.S.Code Cong. & Admin.News 1978, p. 4649)). It follows that Dr. Griffin also must be a beneficiary able to sue when she is denied requested information.

Central States responds that even if Dr. Griffin is a beneficiary, she still did not state a claim for statutory damages because it sent her the summary plan description, and ERISA did not require it to furnish either Data iSight's fee schedules and rate tables or its contract with Blue Cross Blue Shield.

This argument is meritless. First, Central States did turn over the summary plan description and plan document—but five months after the 30-day deadline. *See* 29 U.S.C. § 1132(c)(1).

Second, Central States was also required to produce, as requested, Data iSight's fee schedules. The fee schedules, used to calculate Dr. Griffin's payment, are part of the "pricing methodology" that Central States cited in explaining Dr. Griffin's benefits, and thus they are the basis of its benefits determination. *See Mondry*, 557 F.3d at 800.

Finally, Dr. Griffin also requested a copy of the contract between Central States and Blue Cross Blue Shield, but she was never provided a copy of that contract. That contract governs the operation of the plan in that it defines the roles of the plan and claims administrators. Therefore, Central States was required to provide that document to her. *Id.* at 796.

### III. CONCLUSION

The district court's judgment dismissing Count 2 of the complaint is AFFIRMED. However, we VACATE the judgment regarding Counts 1 and 3 and REMAND those Counts for further proceedings consistent with this opinion.