NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 14, 2019
Decided December 16, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 19-1286

| | |
|---|---|
| STEPHANIE OLIVAS,<br>    *Plaintiff-Appellant*,<br><br>*v*.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br>    *Defendant-Appellee*. | Appeal from the United States District Court for the Northern District of Illinois, Western Division.<br><br>No. 17 CV 50197<br><br>Iain D. Johnston,<br>*Magistrate Judge*. |

**O R D E R**

Stephanie Olivas, a 37-year-old woman with multiple chronic conditions, appeals from the district court's decision to uphold an administrative law judge's denial of her application for disability insurance benefits. Her appeal is narrow: she argues that the ALJ improperly discounted opinions from two treating physicians. Because the ALJ adequately supported her decision to give little weight to these medical opinions, we affirm.

Olivas was only 30 years old when she applied for disability insurance benefits in 2013 based on multiple physical and mental ailments, including fibromyalgia, degenerative disc disease, anxiety, and obsessive-compulsive disorder. She had stopped

working in early 2011. Up until this time, she held various jobs as a receptionist, cashier, telemarketer, assembler, and caretaker. She applied for benefits after a February 2013 car accident, which, she stated, worsened her fibromyalgia symptoms.

The medical record recounts treatment she received from physicians and psychologists between 2011 and 2015 for her conditions, many of them chronic. Throughout this time, Olivas—who was clinically obese—also was trying to lose weight. She consistently reported to doctors that, despite pain from her fibromyalgia, she exercised several times per week. She ultimately lost 141 pounds.

To support her application, Olivas relied on two doctors' letters—both of which the ALJ discounted. The first letter was prepared in September 2015 in connection with Olivas's application by her primary-care doctor, Susan Crowe, a family-medicine physician. Dr. Crowe opined that Olivas would never be able to work because of her "psychological afflictions." These included Olivas's ongoing struggles with severe anxiety, repressed anger, and other emotional challenges—issues that the doctor stated were "most definitely expected to persist for many years to come." The doctor also recorded Olivas's complaints about experiencing "pain flares" four to six times per week. Finally, Dr. Crowe reported that Olivas had osteoarthritis in her ankles following previous fractures that "affected her ability to stand or sit consistently for any period of time."

The second letter that Olivas relied upon was prepared around the same time by her treating psychiatrist, Dr. David Lopez. In a short "To Whom It May Concern" letter, Dr. Lopez stated that Olivas had been complying with treatment recommendations for the past half year, but her psychiatric symptoms had improved only minimally. The doctor also wrote that Olivas had told him that these symptoms had prevented her from working since 2012.

At a hearing before an ALJ in January 2016, Olivas testified about her symptoms. She stated that on an average day, her pain measured a four or five out of ten, that she could not sit more than fifteen minutes without needing to stand up, and that she could walk for only a block or two. She also stated that she had difficulty lifting her fifteen-pound daughter and struggled to lift even a gallon of milk.

The ALJ determined that Olivas had the residual functional capacity to do light work subject to certain conditions. At step two, the ALJ characterized as severe Olivas's obesity, myalgia (general term for muscle pain), mood disorders, anxiety, and

obsessive-compulsive disorders, but not her fibromyalgia (chronic myalgia plus fatigue, depression, or other symptoms) or degenerative disc disease. Evaluating the Paragraph B criteria at step three, the ALJ found Olivas's limitations in daily activities between 2010 and 2013 to be mild based on her abilities to exercise, attend to her personal care, and do most "normal" activities. Given Olivas's abilities to be an attentive mother, administer her own medications, and follow diet programs effectively, the ALJ also found that Olivas showed no more than moderate limitations in social functioning and concentration, persistence, and pace.

The ALJ discredited Olivas's testimony because her allegations about the extent of her pain and abilities were inconsistent with the treatment records. Though she testified that she could not sit or walk for long periods, Olivas did not apprise her doctors of such limitations. She did tell her doctors, however, that from 2012 to 2015 she exercised daily and lifted small weights—activities inconsistent with her testimony. Moreover, an exam in 2011 revealed that she had normal range of motion and muscle strength, while one in 2013 revealed a normal gait (albeit with a reduced range of motion). And x-rays conducted by a treating rheumatologist in October 2015 showed "no significant arthritic changes."

The ALJ also gave little weight to the letters from Olivas's treating physicians. First, regarding Dr. Crowe's letter, the ALJ found it "vague, conclusory, lack[ing] support, [and] a function-by-function analysis, and … incomplete." In the ALJ's view, neither Dr. Crowe's treatment records nor Olivas's own testimony supported the doctor's statements that Olivas experienced flares of pain four to six times per week or had osteoarthritis in her ankles. Moreover, Dr. Crowe's opinion about Olivas's psychiatric symptoms addressed an impairment outside her family-medicine expertise. As for Dr. Lopez's letter, the ALJ gave it little weight because it offered no independent opinion of Olivas's abilities or functional capacity (as opposed to recounting Olivas's own subjective reports of symptoms) and because his treatment relationship with her was "quite brief"—just a few visits in 2015.

The ALJ ultimately determined that although Olivas could not perform her past work, she could nevertheless perform other light and unskilled work, such as that of a bagger in a factory or a press operator. A magistrate judge affirmed the ALJ's decision and upheld the denial of benefits.

This appeal involves just one issue: whether the ALJ gave too little weight to the opinions of Olivas's two treating physicians, Dr. Crowe and Dr. Lopez. Under the

treating physician rule in effect at the time of Olivas's application,[1] the ALJ had to give a treater's opinion controlling weight if it was "well-supported and not inconsistent with other substantial evidence." *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016); *see also* 20 C.F.R. § 404.1527(c)(2)–(6). If "controlling" weight is not accorded to a treating physician's views, the ALJ must assign it a proper weight based on factors like the length and nature of the physician-patient relationship, the opinion's consistency with the record, and the physician's area of specialty. *See* 20 C.F.R. § 404.1527(c)(2); *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018). As long as the ALJ considers these factors and minimally articulates her reasons, we will uphold her decision not to assign controlling weight to a treating physician's opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

Olivas first argues in general terms that Dr. Crowe's letter was not inconsistent with the doctor's own notes, which referred to Olivas's difficulties interacting with others and her inability to work based on her physical pain and emotional imbalances. But in view of the standard set forth in § 404.1527(c)(2), the ALJ's explanation for discounting Dr. Crowe's opinion was sufficient. First, the ALJ appropriately found that Dr. Crowe's key opinions—that Olivas had osteoarthritis in her ankles, that she had difficulty walking, and that she experienced pain flares four to six times per week— were unsupported by and inconsistent with record evidence, including her own progress notes. *See Skarbek v. Barnhart*, 390 F.3d 500, 503–04 (7th Cir. 2004). Further, the ALJ reasonably gave little weight to Dr. Crowe's opinions to the extent that they were based on only Olivas's subjective reports of her symptoms, *see Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013), or that they concerned psychiatric impairments—an area outside Dr. Crowe's specialization, *see White v. Barnhart*, 415 F.3d 654, 659–60 (7th Cir. 2005).[2]

---

[1] The treating physician rule applies only to claims like Olivas's that were filed before March 27, 2017, when the regulations changed prospectively. 20 C.F.R. § 404.1520c(a); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018).

[2] Olivas relatedly argues that the ALJ erred in failing to address a second opinion that Dr. Crowe prepared in June 2014. But this second opinion is essentially duplicative of the letter Dr. Crowe wrote in September 2015. Further, the June 2014 document (entitled "Progress Notes" and subtitled "Request for Disability Report") does not appear to be a formal opinion. Rather, it merely lists symptoms—i.e., Olivas's social anxiety and inability to sit for more than fifteen minutes—that Dr. Crowe covered in her September 2015 opinion.

   With regard to Dr. Lopez's opinion, Olivas has even less to say. She does not refute the ALJ's finding that their treatment relationship was brief and instead insists, without any apparent relevance, that Dr. Lopez's treatment notes were consistent with Dr. Crowe's opinion. Olivas also asserts that the lack of a function-by-function analysis should not be grounds for rejecting the doctor's opinion, but that was not the ALJ's only basis for her ruling: she also discounted Dr. Lopez's letter (appropriately so) because it offered no independent opinion of Olivas's abilities and merely restated Olivas's reports of her own symptoms. *See Bates*, 736 F.3d at 1100.

   Olivas raises three other arguments that she does not develop and has therefore waived. *See* FED. R. APP. P. 28(a)(8); *Griffin v. TeamCare*, 909 F.3d 842, 846 (7th Cir. 2018). She asserts generally (without citing to the record or explaining the relevance of referenced authority) that the ALJ's opinion is unsupported by substantial evidence, that the ALJ cherry-picked evidence, and that the ALJ impermissibly based its decision to deny benefits on gaps in the treatment record. These undeveloped arguments do not provide any basis for finding error.

   For the foregoing reasons, we AFFIRM.